USDC-SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#:
DATE FILED: 1/16/19

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

IVA WESTBROOKE,

           Plaintiff,

v.

BELLEVUE HOSPITAL CENTER, NYC
HEALTH & HOSPITALS CORP., and CITY
OF NEW YORK,

           Defendants.

No. 16-CV-9845 (RA)

MEMORANDUM OPINION AND ORDER

---

RONNIE ABRAMS, United States District Judge:

    Plaintiff Westbrooke, proceeding *pro se*, commenced this action against her former employers Bellevue Hospital and New York City's Health & Hospitals Corporation ("HHC"), as well as the City of New York (collectively, "Defendants") for various employment-discrimination and retaliation claims arising from her employment at and termination from Bellevue. On August 31, 2018, the Court granted Defendants' motion to dismiss Westbrooke's First Amended Complaint ("FAC") pursuant to Fed. R. Civ. Pro. 12(b)(6), finding that Westbrooke had failed to allege any grounds on which the Agreement and Release she executed with HHC after she was terminated—which bars her claims against Defendants in this action—was unenforceable. *See* Mem. Op. and Order ("Order") (Dkt. 36).[1] The Court nevertheless permitted Westbrooke to file a motion for leave to amend and a proposed second amended complaint ("SAC"), which Westbrooke timely filed on October 1, 2018, and which Defendants opposed. *See* Pl's Mot. Leave (Dkt. 37); Def's Mem. Opp. (Dkt. 38). For the reasons that follow, the Court denies Westbrooke's motion for leave to amend and dismisses her claims against Defendants with prejudice.

---

[1] The Court assumes the parties' familiarity with the Order.

## BACKGROUND

Westbrooke is an African-American woman born in 1954. SAC at 6 (Dkt. 37-1).[2] She walks with a cane. *Id.* She was transferred to Bellevue Hospital in 2011 and was promoted in July 2013 to the position of director of respiratory care. *Id.* Westbrooke alleges that throughout her employment at Bellevue she was discriminated against on the basis of her age, gender, disability, and race. *Id.* Westbrooke alleges that she complained to "the hospital's internal employment officer" about the specific instances of discrimination that she experienced but that nothing was done. *Id.* at 8, 10. As a result of her complaints, Westbrooke alleges that her supervisors retaliated against her by refusing to provide her with an assistant director, repeatedly and publicly questioning her competence, and issuing her negative employment evaluations, ultimately leading to her termination on May 1, 2015. *Id.* at 8, 10-11.

Westbrooke filed a Complaint in December 2016, and her First Amended Complaint in January 2017, asserting federal, state, and local discrimination and retaliation claims based on her employment at and termination from Bellevue. *See* Compl. (Dkt. 1); FAC (Dkt. 3). On August 31, 2018, the Court granted Defendants' motion to dismiss Westbrooke's FAC pursuant to Fed. R. Civ. P. 12(b)(6), concluding that: (1) the Court was entitled to consider the Agreement and Release ("Agreement") that Westbrooke executed with HHC on June 8, 2015, after she was terminated, in ruling on Defendants' motion to dismiss, because, while it was not attached to the FAC,[3] it was sufficiently integral to the FAC, *see Faulkner v. Beer*, 463 F.3d 130, 134 (2d Cir. 2006); (2) the Agreement's terms clearly and unambiguously barred Westbrooke's employment-based claims

---

[2] The Court refers to the ECF pagination of the SAC and its attachments throughout this Opinion for ease of reference.

[3] The Agreement was attached to the declaration of Amanda Blair in support of Defendants' motion to dismiss. *See* Blair Decl., Ex. C (Dkt. 31-3).

2

against Defendants; (3) Westbrooke executed the Agreement knowingly and voluntarily based on the Court's application of the relevant factors as set forth in *Bormann v. AT&T Comms., Inc.*, 875 F.2d 399, 402–403 (2d Cir. 1989)[4]; (4) Westbrooke's asserted defense of "economic duress" was insufficient to void the agreement as she had not alleged any "threatening conduct" on the part of Defendant that deprived her of her free will in signing the Agreement, *see Interpharm, Inc. v. Wells Fargo Bank, Nat'l Ass'n*, 655 F.3d 136, 142 (2d Cir. 2011); and (5) even if Westbrooke had made a sufficient showing that she signed the Agreement under duress, Westbrooke nonetheless ratified the Agreement because she had made no attempt to "return the money she received from [Defendants] in consideration for the Release." *See Smith v. JPMorgan Chase*, No. 15 Civ. 808 (PAE), 2016 WL 5339548, at *9 (S.D.N.Y. Sept. 23, 2016); Order at 5–14. The Court thus dismissed all of Westbrooke's employment claims, albeit without prejudice.

As to Westbrooke's remaining claim seeking confirmation that her "personnel records indicate that [she] retired from service rather than that [she] was discharged," *see* FAC at 8, the Court held that Westbrooke had not alleged any facts indicating that Defendants breached their promise to provide prospective employers with neutral references, and accordingly dismissed that claim as well.

---

[4] Specifically, the Court found that Westbrooke executed the Agreement knowingly and voluntarily because her business experience suggested that she was able to understand the Agreement and assess the costs and benefits of signing it; she had sufficient time to consider the agreement (21 days before signing and an additional seven thereafter to revoke it); the Agreement provided Westbrooke with three months' pay and a promise to inform prospective employers that she had left voluntarily; and Defendants encouraged Westbrooke to obtain an opinion from private counsel before signing the Agreement and gave her more than sufficient time to do so. Order at 8–10; *Bormann*, 875 F.2d at 402–403 (outlining these factors for district courts to consider in assessing whether a release was entered into knowingly and voluntarily). Although the remaining two *Bormann* factors—whether Plaintiff took part in the drafting of the Agreement and whether Plaintiff was represented by counsel in signing the Agreement—favored Westbrooke, the totality of the circumstances dictated that Westbrooke, as a matter of law, knowingly and voluntarily signed the Agreement. Order at 10–11.

3

Despite the fact that Westbrooke had given no indication that she had any plausible basis to argue that she did not sign the Agreement knowingly and voluntarily and that the Agreement was not otherwise unenforceable, the Court permitted Westbrooke to file a motion for leave to amend and a proposed second amended complaint. Order at 15-16. The Court advised Westbrooke that in order to avoid the effects of the Agreement she would need to allege, in good faith, facts to support her contention that the Agreement was voidable and that she had not ratified it. *Id.* On October 1, 2018, Westbrooke filed a motion for leave to amend and the proposed SAC, which Defendants opposed.

## LEGAL STANDARD

Federal Rule of Civil Procedure 15(a) provides that the "court should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2); *see also Foman v. Davis*, 371 U.S. 178, 182 (1962) ("Rule 15(a) declares that leave to amend 'shall be freely given when justice so requires'; this mandate is to be heeded."). Amendments to *pro se* complaints, in particular, should be granted "fairly freely." *Holmes v. Goldin*, 615 F.2d 83, 85 (2d Cir. 1980). Nevertheless, "a futile request to replead should be denied." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000).

Whether to permit a plaintiff to amend its complaint is a matter committed to the Court's "sound discretion," and a "district court has discretion to deny leave for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007). "A proposed amendment is also deemed futile if the proposed claim could not withstand a Rule 12(b)(6) motion to dismiss." *Mason Tenders Dist. Council of Greater N.Y. v. Phase Constr. Servs., Inc.*, 318 F.R.D. 28, 36 (S.D.N.Y. 2016) (citing *Lucente v. IBM Corp.*, 310 F.3d 243, 258 (2d Cir. 2002)). "The Proposed [Second]

Amended Complaint may therefore be scrutinized as if defendant[s'] objections constituted a motion to dismiss." *Bonfiglio v. New York Presbyterian Hosp.*, No. 10 Civ. 4939(SAS), 2011 WL 2436706, at *3 (S.D.N.Y. June 16, 2011) (second alteration in original). In assessing whether the SAC states a claim for which relief can be granted, a Court must accept the facts alleged in the SAC as true and construe them in the light most favorable to the plaintiff. *See Thea v. Kleinhandler*, 807 F.3d 492, 494 (2d Cir. 2015).

## DISCUSSION

Defendants argue that Westbrooke's SAC fails to allege any facts to support her contention that the Agreement is voidable or counter the conclusion that she ratified it. Def's Mem. Opp. at 3-5. Accordingly, Defendants maintain that Westbrooke's motion for leave to amend should be denied as futile as this Court has already held that the Agreement bars Westbrooke's employment claims and that Westbrooke signed the Agreement knowingly and voluntarily. *See id.* The Court agrees.

Economic duress appears to be the only basis on which the SAC alleges that the Agreement is voidable. *See* SAC at 5 (deeming acceptance of the Agreement "involuntary" as a result of being "unable to pay" for health insurance while unemployed). "To void a contract on the ground of economic duress, the complaining party must show that its agreement was procured by means of (1) a wrongful threat that (2) precluded the exercise of its free will." *Interpharm, Inc.*, 655 F.3d at 142. Westbrooke must also allege that Defendants engaged in "threatening conduct that is 'wrongful,' *i.e.*, outside of [Defendants'] legal rights." *Id.* Moreover, "a mere demonstration of financial pressure or unequal bargaining power will not, by itself, establish economic duress." *Id.*

Like the FAC, Westbrooke's SAC fails to plausibly allege that the Agreement is voidable because Westbrooke executed it under economic duress. Westbrooke alleges that after she was

5

terminated she submitted an Application for Service Retirement to the NYC Employees' Retirement System which was denied; that she lost her healthcare benefits and could not afford "the alternative [coverage under] COBRA"; and that she had "no access to [her] home – causing involuntary acceptance of this contract." SAC at 5. Although the Court is sympathetic to Westbrooke's personal circumstances, these allegations do not constitute economic duress as a matter of law.

Westbrooke has not alleged that she was subjected to a "wrongful economic threat" that deprived her of her free will when she executed the agreement. *Mazurkiewicz v. New York City Health & Hosps. Corp.*, 585 F. Supp. 2d 491, 500 (S.D.N.Y. 2008), *aff'd*, 356 F. App'x 521 (2d Cir. 2009); *cf. Nikci v. Quality Bldg. Servs.*, 995 F. Supp. 2d 240, 249 (S.D.N.Y. 2014) (holding that even a threat of termination prior to signing a settlement agreement did not support an economic duress claim because the threat could not be deemed to have precluded the employee's free will). Nor has Westbrooke alleged any facts suggesting that Defendants employed any "high pressure or deceptive tactics" in an effort to force Westbrooke to sign the Agreement. *See Pallonetti v. Liberty Mut.*, 10 Civ. 4487, 2011 WL 519407, at *5 (S.D.N.Y. Feb. 11, 2011) ("[C]ourts look for evidence of high pressure or deceptive tactics," to determine "whether a party lacked 'meaningful choice'"). Indeed, Westbrooke signed the Agreement several weeks after she was terminated, and the SAC bears no indication that throughout that time Westbrooke was anything other than "free to reject the terms of the agreement, which [s]he did not." *Figueroa v. MRM Worldwide*, No. 12-CV-4115 (HBP), 2014 WL 902953, at *10 (S.D.N.Y. Mar. 7, 2014). Rather, all Westbrooke has alleged is that, when she signed the Agreement, she was under serious financial strain. Nevertheless, the "case law is clear that 'difficult choices do not constitute duress.'" *See id.* at *10. The Court therefore finds that the SAC's allegations regarding

6

Westbrooke's economic difficulties do not alter this Court's prior conclusion that Westbrooke signed the Agreement knowingly and voluntarily, and that the Agreement is not voidable on grounds of economic duress. *See Kramer v. Vendome Group LLC*, No. 11 Civ. 5245(RJS), 2012 WL 4841310, at *6 (S.D.N.Y. Oct. 4, 2012) (holding that plaintiff had failed to adequately allege that it signed release of employment discrimination claims under economic duress and accordingly granting motion to dismiss plaintiff's employment discrimination claims with prejudice). Because economic duress is the only basis for voiding the Agreement that Westbrooke has alleged, the SAC is futile on that basis alone, as all of Westbrooke's claims remain barred by the Agreement.[5]

In any event, even if Westbrooke had pled facts amounting to economic duress, Westbrooke's SAC would remain futile because she has alleged no basis for the Court to find that she repudiated the Agreement. Under New York law, "the person claiming duress must act promptly to repudiate the contract or release or . . . be deemed to have waived [the] right to do so." *VKK Corp. v. Nat'l Football League*, 244 F.3d 114, 122 (2d Cir. 2001). The same is true for plaintiffs claiming that releases of their employment claims for discriminatory termination were unknowingly or involuntarily made. *See Smith*, 2016 WL 5339548, at *9. That Westbrooke "did not passively" accept her termination and that she "went to see attorn[ey]s . . . to fight back," SAC at 5, does not change the fact that she ultimately chose to sign the Agreement and Release. Moreover, the SAC does not allege that Westbrooke made any attempt to "return the money she received from [Defendants] in consideration for the Release." *Smith*, 2016 WL 5339548, at *9.

---

[5] Unlike the FAC, Westbrooke's SAC does not include a request that the Court confirm that her personnel records indicate that she "retired from service" as opposed to being discharged. *Compare* FAC at 8, *with* SAC at 7. But even if it did, Westbrooke's SAC does not allege any additional facts indicating that Defendants breached a promise to provide future employers with neutral references. Thus, to the extent Westbrooke still intends to pursue this claim, the Court dismisses it with prejudice.

7

Accordingly, Westbrooke is "deemed to have ratified the Release and is thereby barred from challenging its validity." *See id*; *see also Hewett v. Leblang*, No. 12 Civ. 1713 PKC, 2012 WL 2820274, at *7 (S.D.N.Y. July 5, 2012) (finding absence of allegation that plaintiff returned money paid to her in consideration for the release of her employment discrimination claims meant that the plaintiff had ratified the agreement and could "not now avoid its terms"). The Court therefore holds that even if Westbrooke had plausibly alleged that she was under economic duress when she signed the Agreement, the SAC remains futile because Westbrooke ratified the Agreement by failing to return the money.

Mindful of the important principle that "a *pro se* litigant in particular should be afforded every reasonable opportunity to demonstrate that [s]he has a valid claim," *Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014), the Court nonetheless finds that any further amendment would be futile at this time. *See, e.g., McFadden v. Pataki*, No. 17-CV-1048 (CM), 2017 WL 4350591, at *6 (S.D.N.Y. July 17, 2017) (denying *pro-se* plaintiff leave to amend where amendment was futile). The Court previously advised Westbrooke that if she had a good faith basis to allege further facts to support her assertion of economic duress or contention that she had not ratified the Agreement, she would need to include those facts in her proposed amended complaint. Order at 15-16. Westbrooke's sparse new allegations do not contain any such facts. And Westbrooke has already had the opportunity to amend (or propose an amendment of) her complaint twice. "Three bites at the apple is enough." *Official Comm. Of Unsecured Creditors of Color Title, Inc. v. Coopers & Lybrand, LLP*, 322 F.3d 147, 168 (2d Cir. 2003). The Court therefore denies Westbrooke's motion for leave to amend and dismisses this case with prejudice.

## CONCLUSION

For the reasons explained above, Plaintiff's motion for leave to amend is denied and Plaintiff's claims against Defendants are dismissed with prejudice.

The Clerk of Court is respectfully directed to mail a copy of this Memorandum Opinion and Order to Plaintiff and to close this case.

SO ORDERED.

Dated: January 16, 2019
New York, New York

Ronnie Abrams
United States District Judge